**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 25-cv-01821-NYW-SBP

MUTAZ BALLAH ZUHAIR MUHAMMAD SAID,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF STATE,
U.S. EMBASSY IN BAGHDAD, IRAQ,
MARCO RUBIO, in his official capacity, and
STEVEN H. FAGIN, in his official capacity,

Defendants.

---

**ORDER ON MOTION TO DISMISS**

---

This matter comes before the Court on the Motion to Dismiss First Amended Complaint ("Motion" or "Motion to Dismiss"), filed by Defendants on August 25, 2025. [Doc. 10]. Plaintiff Mutaz Ballah Zuhair Muhammad Said ("Plaintiff" or "Mr. Said") has responded in opposition, [Doc. 12], and Defendants replied, [Doc. 21]. The Court finds that oral argument would not materially assist in the disposition of the Motion to Dismiss. Upon review of the Motion and the related briefing, the applicable case law, and the entire docket, the Motion to Dismiss is respectfully **DENIED**.

**BACKGROUND**

The following facts are drawn from the operative First Amended Complaint in the Nature of Mandamus Arising from Defendants' Refusal to Adjudicate Plaintiff's Immigrant Visa Applications ("Amended Complaint"), [Doc. 11], and the Court presumes they are true for the purposes of the Motion to Dismiss. Mr. Said is a citizen of the United States

whose parents are citizens and residents of Iraq. [*Id.* at ¶¶ 1–2]. In February of 2022, Mr. Said filed visa applications, I-130 Petitions for Alien Relative, on behalf of his parents, Rafeeah Al-Azzawi and Zuhair Nsaif. [*Id.* at ¶¶ 10–14]. In March of 2023, United States Citizenship and Immigration Services ("USCIS") approved the I-130 petitions. [*Id.* at ¶ 15]. The United States Department of State then processed the cases and sent them to the U.S. Embassy in Baghdad, Iraq, for the next step: interviews of Mr. Said's parents. [*Id.* at ¶ 16]. The interviews were conducted in May of 2024 by the United States Department of State. [*Id.* at ¶ 17].

Following the interviews, "Defendants issued a temporary 'refusal' in Plaintiff's visa cases" and "placed the cases under administrative processing"; the cases are now "purportedly in the process of additional review." [Doc. 12 at 9].[1] The consular officer requested additional information from Mr. Said's parents, and they submitted Forms DS-5535 shortly thereafter. [Doc. 11 at ¶ 17]. Since then, the Department of State has "refused to issue a final decision on these cases." [*Id.*]. Mr. Said "has made repeated attempts to obtain a decision in this matter" and "has contacted the Consulate multiple times," but it "has led nowhere." [*Id.* at ¶ 18]. As of April 20, 2026, there has been no change to Mr. Said's parents' applications. [Doc. 23 at 1–2].

[1] As referenced above, these facts were admitted in Mr. Said's Response to the Motion to Dismiss and are therefore taken as true for the purposes of this Motion. *See, e.g.*, *CR Holding Co. v. Campbell*, No. 11-cv-02051-JWL-GLR, 2011 WL 2357649, at *2 (D. Kan. June 9, 2011) (facts are "not controverted" when "plaintiffs expressly admit" them in response to a motion to dismiss); *Kerr v. First Franklin*, No. 12-cv-08065-PCT-JAT, 2012 WL 3637911, at *2 (D. Ariz. Aug. 23, 2012) (considering facts that plaintiff provided in response to motion to dismiss that were not included in the complaint); *Delgado v. SoloPak Pharms., Inc.*, No. 96-cv-07397, 1997 WL 4030703, at *3 (N.D. Ill. July 15, 1997) (courts "may consider as true the fact" that plaintiff admitted in response to motion to dismiss).

This action followed. Mr. Said filed his Amended Complaint on August 21, 2025, bringing one claim under the Administrative Procedure Act, 5 U.S.C. § 706, ("APA") against all Defendants for unlawfully withholding and unreasonably delaying the adjudication of Mr. Said's parent's visa applications. [*Id.* at ¶¶ 19–31]. Additionally, Mr. Said seeks a writ of mandamus compelling Defendants to: "promptly complete all administrative processing within sixty days," "issue immigrant visas" to Mr. Said's parents, and "explain to Plaintiff the cause and nature of the delay and inform Plaintiff of any action that may be taken to accelerate processing of the visa applications." [*Id.* at 7].

## LEGAL STANDARD

Rule 12(b)(1) "allows a court to dismiss a complaint for lack of subject matter jurisdiction." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Id.* (quoting *Gunn v. Minton*, 568 U.S. 251, 256 (2013)). "[F]ederal subject matter jurisdiction is elemental" and "its presence must be established in every cause under review in the federal courts." *Id.* (quotation omitted). "The party invoking federal jurisdiction has the burden to establish that it is proper, and 'there is a presumption against its existence.'" *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)). A "court has wide discretion to allow affidavits [and] other documents . . . to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995), *abrogated in part on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425 (2001).

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible." (quotation omitted)). The Court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

Defendants argue that the Court should dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for three reasons: (1) lack of jurisdiction, because "[t]he State Department already took the only discrete action required of it by federal law" in adjudicating and refusing Mr. Said's parents' petitions, and "the APA does not provide jurisdiction to compel discretionary post-refusal administrative processing and potential re-adjudication"; (2) the doctrine of consular non-reviewability which "bars

judicial review of State's refusal decision"; and (3) "fail[ure] to plausibly allege an unreasonable delay in the re-adjudication of the already refused visas." [Doc. 10 at 6]. The Court addresses each argument in turn, beginning with jurisdiction. *See Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1301 (10th Cir. 1980) ("A federal court must in every case, and at every stage of the proceeding, satisfy itself as to its own jurisdiction . . . .").

## I. Jurisdiction

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). In his Complaint, Mr. Said alleges that the Court "has federal question jurisdiction over this [case] pursuant to 28 U.S.C. § 1331." [Doc. 11 at ¶ 7]. However, while § 1331 "grants the district courts original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," it "does not waive the government's sovereign immunity." *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005) (quotation omitted).

In his Response to the Motion to Dismiss, Mr. Said asserts that jurisdiction lies "under both the APA and Mandamus Act." [Doc. 12 at 3]. It is true that the APA "contains a limited waiver of the United States' sovereign immunity," *City of Albuquerque v. United States Dep't of Interior*, 379 F.3d 901, 907 (10th Cir. 2004) (quotation omitted), and permits courts to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1). For a Court to have statutory jurisdiction pursuant to 5 U.S.C § 706(1), "a plaintiff must identify a 'failure to take an agency action' that is (1) discrete and (2) legally required.'" *Audubon of Kan., Inc. v. United States Dep't of Interior*, 67 F.4th 1093,

1108 (10th Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62–63 (2004)); *see also Norton*, 542 U.S. at 64–65 ("[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take. . . . The limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law."); *Niknam v. United States Dep't of State*, No. 23-cv-01380-PAB-SBP, 2024 WL 709636, at *3 (D. Colo. Feb. 21, 2024) ("Subject matter jurisdiction over claims under the APA for unreasonable delay in agency action requires plaintiffs to establish that the government has a specific, non-discretionary duty to act." (cleaned up)).

As for the Mandamus Act, courts have "original jurisdiction of any action in the nature of mandamus to compel . . . any agency [of the United States] to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, "'[m]andamus is a drastic remedy, available only in extraordinary circumstances,'" and it is not available "[w]hen review by other means, such as under the APA, is possible." *Audubon of Kan.*, 67 F.4th at 1111 n.10 (quoting *W. Shoshone Bus. Council ex rel. W. Shoshone Tribe of Duck Valley Rsrv. v. Babbitt*, 1 F.3d 1052, 1059 (10th Cir. 1993)); *see also Granados v. United States*, No. 23-cv-00250-MEH, 2023 WL 5831515, at *6 (D. Colo. Aug. 23, 2023) ("In the Tenth Circuit, the availability of a remedy under the APA precludes an alternative request for writ of mandamus."). "Section 706(1) of the APA incorporates the traditional requirements for mandamus relief—a discrete, legally required action that the agency has failed to perform." *Audubon of Kan.*, 67 F.4th at 1111 n.10.

Mr. Said alleges that Defendants have unreasonably delayed the adjudication of his parents' visa applications by failing to complete administrative processing and render

a "final decision" after issuing a "temporary 'refusal.'" *See* [Doc. 12 at 9; Doc. 6 at ¶¶ 22, 26–27]. The question before the Court is thus whether this alleged delay implicates a discrete, legally required agency action that the APA authorizes this court to compel. The Court finds that it does.

***Statutory and Regulatory Framework.*** The Immigration and Nationality Act ("INA") requires that "[a]ll immigrant visa applications," such as the I-130 Petitioner for Alien Relative, "shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Once an immigrant visa application has been "properly completed and executed before a consular officer," the consular officer must take one of three actions: "issue the visa, refuse the visa . . . or, pursuant to an outstanding order under INA 243(d),[2] discontinue granting the visa." 22 C.F.R. § 42.81(a); *see* 9 Foreign Affairs Manual § 504.1-3(g) ("Once an application has been executed, [the consular officer] must either issue the visa or refuse it."). As Defendants acknowledge, taking one of these actions is a discrete and legally required duty. [Doc. 10 at 8]. "If a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e).

***Refusal of Mr. Said's Parents' Applications.*** Defendants do not dispute that they had a "mandatory duty" to either issue Mr. Said's parents' visas or refuse them. [Doc. 10 at 8]. They contend, however, that they have already discharged this duty when the consular officer refused Mr. Said's parents' applications after the interviews. [*Id.*]. Mr. Said admits that the consular officer issued a refusal in Mr. Said's parents' applications

---

[2] None of the Parties argue that there is such an outstanding order here.

but disagrees that this was a complete discharge of Defendants' duties. *See* [Doc. 12 at 9]. He argues that Defendants have "failed to fully adjudicate [the] applications" because the applications remain "in the process of additional review." [*Id.*].

Whether the consular officer's refusal—followed by placement of the applications in administrative processing—fully "discharges" the agency's legally required duties or whether it leaves a continuing nondiscretionary obligation to complete administrative processing and render a further decision is a question on which courts, including in this District, are split. Some courts have concluded that a refusal does not terminate the government's duty where the application remains in administrative processing, reasoning that administrative processing necessarily involves additional consideration and a subsequent "final decision." *See, e.g.*, *Azadani v. Gaudiosi*, No. 24-cv-00825-CNS, 2025 WL 35597, at *3–4 (D. Colo. Jan. 6, 2025) (collecting cases). Other courts hold that because the regulations only require a consular officer to issue or refuse a visa, if an officer refuses a visa, there is no longer any nondiscretionary duty to act on the application whether it is placed in administrative processing or not. *See, e.g.*, *Jung v. Goldman*, No. 24-cv-02500-SBP, 2025 WL 2687983, at *9 (D. Colo. Sept. 19, 2025); *Conley v. United States Dep't of State*, 731 F. Supp. 3d 104, 111 (D. Mass. 2024) (collecting cases standing for the proposition that "once action [such as refusal subject to further administrative processing] has been taken, there is no longer a viable claim of unreasonable delay"). The Tenth Circuit has not ruled on this issue, but the two other Courts of Appeals who have considered factually similar issues ruled in line with the latter group of cases. *See Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *6 (D.C. Cir. July 24, 2024); *Hussein v. Beecroft*, 782 F. App'x 437, 440–43 (6th Cir. 2019).

The Court agrees with Defendants that as far as 22 C.F.R § 42.81(a), the only relevant requirement is that after an interview, the consular officer either issues or refuses the visa. This would be the end of the inquiry if the consular officer *issued* the visa. However, if a consular officer *refuses* the visa, as here, 22 C.F.R. § 42.81(e) comes into play. Section 42.81(e) provides: "If a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e) (emphasis added).

While neither Party raises this provision, this Court looks to it because it implicates subject matter jurisdiction. *See City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017) (observing that federal courts have an independent obligation to consider their own subject matter jurisdiction). Section 42.81(e) uses "mandatory language" that "makes the act of reconsideration non-discretionary" when the visa applicant meets certain requirements, i.e. if within a one year period of the denial of a visa the applicant adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case "shall be" reconsidered. *Rivas v. Napolitano*, 714 F.3d 1108, 1111 (9th Cir. 2013) (citing 22 C.F.R. § 42.81(e)). *But see Ramizi v. Blinken*, 745 F. Supp. 3d 244, 263 (E.D.N.C. 2024) ("Section 42.81(e) does not impose a discrete, nondiscretionary duty on Defendants to complete the administrative processing of [Plaintiff]'s application . . . . For one, the use of the phrasing 'evidence *tending to overcome* the ground of eligibility,' implies the exercise of discretionary judgment by the consular officer reviewing such evidence."). Therefore, if an application is rejected and an applicant "adduces further evidence tending to overcome the ground of ineligibility"

within one year of the refusal, consular officials *must* reconsider the refusal and take action. *Rivas*, 714 F.3d at 1111. This is a "nondiscretionary, ministerial duty" that "may be compelled under the APA." *Id.*

So, the Court analyzes whether Plaintiff plausibly alleges that (1) Mr. Said's parents submitted further evidence within one year of the consular officer's refusal of their applications, and (2) that further evidence "tend[ed] to overcome the ground of ineligibility." *See* 22 C.F.R. § 42.81(e). The Complaint alleges that after the State Department's interviews with Mr. Said's parents, the consular officer "requested additional information" and Mr. Said's parents submitted Forms DS-5535 "shortly after." [Doc. 11 at ¶ 17]; *see also* [Doc. 12-1 at ¶ 4 (Mr. Said's declaration stating the same)]. While this allegation is thin, and does not define what "shortly after" means nor state whether the Forms DS-5535 that Mr. Said's parents submitted were responsive to the consular officer's request, the Court finds that it is sufficient to meet the requirements of § 41.82(e).

In ruling on motions to dismiss, courts "grant all reasonable inferences from the pleadings in favor of the [non-moving party]." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012); *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (when ruling on a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), courts "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party"). The Court finds it reasonable to infer that "shortly after" means within a year of the interview. On the question of whether the Complaint alleges that the additional information constituted "further evidence tending to overcome the ground of ineligibility on which the refusal was based," the Court first takes judicial notice that around the time of Plaintiffs' parents' interviews, the Department of

State characterized Form DS-5535 as follows: "Consular officers may require submission of a completed DS-5535 to supplement the immigrant and nonimmigrant visa applications. The DS-5535 solicits additional biographic information that is necessary to determine the applicant's eligibility for a visa." *See* 30-Day Notice of Proposed Information Collection: Supplemental Questions for Visa Applicants, 89 Fed. Reg. 33437-02 (Apr. 29, 2024). With this understanding of the purpose of a Form DS-5535, it is a reasonable inference that the Forms DS-5535 that Mr. Said's parents submitted were responsive to the consular officer's request for additional information and therefore "tend[ed] to overcome the ground" on which the consular officer denied the visa. *See, e.g.*, *Makttoof v. Rubio*, No. 24-cv-01344-JDB, 2025 WL 928706, at *4 (D.D.C. Mar. 27, 2025) ("But [Plaintiff] submitted the additional information upon request, not of her own accord, and it would rob her of the reasonable inferences to which she is entitled on a motion to dismiss to figure that the consular officer requested (and thus she submitted) irrelevant information.").

Because the Complaint alleges that Mr. Said's parents adduced further evidence tending to overcome the ground of ineligibility on which the refusal of their visas was based within one year from the date of refusal, the Department of State was legally required to reconsider its refusal of Mr. Said's parents' visa applications and take action. *See* 22 C.F.R. § 42.81(e); *Rivas*, 714 F.3d at 1111. It has not done so. [Doc. 11 at ¶ 17–18]; *see also* [Doc. 10 at 5–6, 8–9]. Thus, the Complaint identifies a "failure to take an agency action that is (1) discrete and (2) legally required," and this Court has jurisdiction pursuant to the APA over this case. *Audubon of Kan.*, 67 F.4th at 1108 (quotation omitted). The Court respectfully declines to dismiss the case on the ground of lack of

subject matter jurisdiction.[3]

## II. Consular Nonreviewability Doctrine

Next Defendants argue that "compelling the State Department to issue the visas or complete administrative processing would violate consular nonreviewability." [Doc. 10 at 13]. They contend that "[t]here is no provision of the INA that authorizes judicial review of a consular officer's decision to refuse a visa, much less for a court to order the State Department to issue a visa." [*Id.* at 12]. Plaintiff responds that "the doctrine of consular non-reviewability has not been triggered," since Defendants have not issued a final decision on the visas, and "the decision not to adjudicate the case is indeed reviewable." [Doc. 12 at 9–10 (emphasis omitted)]. He explains that he "is not asking the Court to order the Defendants to *approve* his immediate relative visa cases," he is only asking the Court to order Defendants to issue "a final decision" on the applications. *See* [*id.* at 8].

The consular nonreviewability doctrine provides that "a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999). However, this doctrine "does not apply where the plaintiffs 'do not seek judicial review of a consular decision, but instead seek a final decision on their applications.'" *Azadani*, 2025 WL 35597, at *3 (quoting *Didban v. Pompeo*, 435 F. Supp. 3d 168, 174 (D.D.C. 2020) and

[3] For the same reasons, the Court respectfully disagrees with Defendants' argument in their Reply that Mr. Said lacks standing. *See* [Doc. 21 at 2–4]. Defendants contend that Plaintiff cannot establish the redressable injury element of standing "because the State Department discharged its mandatory duty to adjudicate Plaintiff's parents' visa applications" and "[t]he State Department has no mandatory duties after refusing the visa." [*Id.* at 3]. The Court has rejected these arguments; the State Department *did* have a mandatory duty after refusing the visa, i.e. to reconsider Plaintiff's parents' visa applications and take action.

citing *Patel v. Reno*, 134 F.3d 929, 931–32 (9th Cir. 1997)).

Here, Mr. Said is not quite right when he argues that he "is not asking the Court to order the Defendants to approve his immediate relative visa cases." *See* [Doc. 12 at 8 (emphasis omitted)]. While the Complaint requests that this Court "issue a writ of mandamus compelling Defendants to promptly complete all administrative processing within sixty days," it also expressly requests that the Court "adjudicate Rafeeah Al-Azzawi's and Zuhair Nsaif's immigrant visas pursuant to this Court's declaratory judgment authority" and "issue a writ of mandamus compelling Defendants to issue immigrant visas to Rafeeah Al-Azzawi and Zuhair Nsaif." [Doc. 11 at 7].

It is well-established that the Court cannot adjudicate Ms. Al-Azzawi's and Mr. Nsaif's visas or order the Department of State to issue their visas—and Mr. Said acknowledges as much. *See* [Doc. 12 at 10 (conceding that "[t]here is no debate that 'under the long-standing doctrine of consular non-reviewability, courts do not typically have subject-matter jurisdiction to review visa *denials*'" (quoting *Didban*, 435 F. Supp. 3d at 173))]. Thus, to the extent that Plaintiff requests the Court to either itself issue his parents' visas or order the Department of State to do so, the doctrine of consular nonreviewability plainly bars that. But to the extent that Plaintiff is requesting that the Court compel Defendants to complete their required reconsideration of Ms. Al-Azzawi's and Mr. Nsaif's visa denials, the doctrine does not apply. *See, e.g.*, *Azadani*, 2025 WL 35597, at *4 (where a consular officer "did not make a final decision," the doctrine "does not apply"); *Makttoof*, 2025 WL 928706 at *3 ("[W]hat [Plaintiff] asks of this Court is not the forbidden review of a final decision but rather the permissible review of its absence."); *Shaheen v. Rubio*, No. 25-cv-01186-APM, 2025 WL 3030123, at *2 (D.D.C. Oct. 30,

2025) ("As to the defense of consular nonreviewability, courts in this District repeatedly have held that inaction on a visa application designated for further processing is not shielded from review under that doctrine." (collecting cases)).

The Court therefore respectfully declines to dismiss the case on the grounds of the doctrine of consular nonreviewability.

## III. Failure to State a Claim

Finally, Defendants argue that Plaintiff has not plausibly alleged unreasonable delay under the APA. [Doc. 10 at 14–16]. The Tenth Circuit has identified five factors to guide courts in determining whether an agency action has been unreasonably delayed under the APA: (1) the extent of the delay, (2) the reasonableness of the delay in the context of the legislation authorizing agency action, (3) the consequences of the delay, (4) administrative difficulties bearing on the agency's ability to resolve an issue, and (5) the complexity of the task envisioned by a court's remand order. *Qwest Commc'ns Int'l Inc. v. FCC*, 398 F.3d 1222, 1239 (10th Cir. 2005); *Glenwood Springs Citizens' All. v. United States Dep't of Interior*, 639 F. Supp. 3d 1168, 1180 (D. Colo. 2022). Defendants contend that each of the *Qwest* factors weighs against Plaintiff or at least does not weigh in his favor, [Doc. 10 at 14–16; Doc. 21 at 8–11], while Plaintiff disagrees and urges the Court to conclude that Plaintiff has "alleged specific facts that indicate unreasonable delay," [Doc. 12 at 13–16]. Mr. Said also argues that "Defendants' motion is premature as the unreasonable analysis should be reviewed following discovery." [*Id.* at 14].

The Court respectfully agrees with Plaintiff that the determination of whether an agency's delay is unreasonable is premature at this stage of the proceeding. As courts in this District and elsewhere have observed, a "claim of unreasonable delay is

necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Azadani*, 2025 WL 35597, at *4 (quoting *Barrios Garcia v. United States Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022) (in turn quoting *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021))); *Albalwah v. Edlow*, No. 25-cv-01255-STV, 2025 WL 3033472, at *5 (D. Colo. Oct. 29, 2025); *Orenday Esparza v. Mullin*, No. 25-cv-00555-SBP, 2026 WL 872352, at *11 (D. Colo. Mar. 30, 2026); *see also, e.g.*, *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003).

The *Qwest* factors themselves "are necessarily fact dependent and there is not enough information in the pleadings to adequately analyze them." *Azadani*, 2025 WL 35597 at *4. The Court finds that in this case they are, at best, inconclusive and do not warrant dismissal. Regarding the first two factors, Mr. Said has alleged that more than three years have passed since USCIS first approved his I-130 petitions. [Doc. 11 at ¶ 15]. Mr. Said's parents submitted additional information regarding their visa applications more than two years ago, [*id.* at ¶ 17], and the Department of State has not yet reconsidered their applications, [Doc. 23 at 1–2]. "There is no bright-line rule as to when an agency's delay in acting becomes unreasonable," *Albalwah*, 2025 WL 3033472, at *5, and while Defendants cite out-of-Circuit cases finding "far longer delays for visa processing not unreasonable as a matter of law," [Doc. 10 at 14–15], at least one court in this District has found that a delay of about 18 months in circumstances nearly identical to this case may be unreasonable, *see Azadani*, 2025 WL 35597 at *4.

Second, regarding the "consequences of the delay" factor, Mr. Said has plausibly alleged significant, concrete emotional and financial hardship as a result of Defendants'

delay. [Doc. 11 at ¶¶ 30–31]; *see Azadani*, 2025 WL 35597, at *4. As with the first two factors, courts are split on whether allegations of familial separation are sufficient to tip this factor in either Party's favor, *compare* [Doc. 10 at 13 (citing cases that hold that prolonged separation from family is experienced by all plaintiffs and does not constitute the type of harm that weighs in a plaintiff's favor)][4] *with Azdani*, 2025 WL 33597, at *4 (crediting Plaintiffs' allegation that he "faces stress, emotional hardship, and expense caused by his mother's inability to immigrate to the United States") *and Albalwah*, 2025 WL 3033472, at *6 (finding that this *Qwest* factor weighed in plaintiff's favor where the plaintiff alleged that "he has struggled to visit his parents abroad," "missed his sister's wedding," and "experienced emotional distress and depression"). Thus, at most at the motion to dismiss phase, this factor is neutral.

With respect to the final two factors, Defendants do not point to any administrative difficulties or complexities associated with Mr. Said's requested relief. *See* [Doc. 10 at 16; Doc. 21 at 10–11]. Indeed, nothing in the Complaint suggests that the requested task, i.e. Defendants reconsidering their original denial of Ms. Al-Azzawi and Mr. Nsaif's visa applications in light of the Forms DS-5535, would be administratively difficult or complex. Instead, Defendants argue that the requested relief would require Defendants to prioritize Mr. Said's parents' applications over the applications of others similarly situated, and courts "may deny relief where a judicial order putting Plaintiff at the head of the queue

---

[4] The Court also observes that all the cases that Defendants cite are based on the factors that the D.C. Circuit considers in evaluating an APA claim, which do not completely overlap with the *Qwest* factors that the Tenth Circuit considers. *See Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (one of the factors in evaluating the reasonableness of an agency's delay is "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"); [Doc. 10 at 13 (citing exclusively cases applying the *TRAC* factors)].

would simply move all others back one space and produce no gain." [Doc. 10 at 16 (cleaned up)]. Mr. Said counters that this argument effectively "propose[s] an untenable rule that would always weigh the fourth factor in their favor" in every APA claim for immigration benefits. [Doc. 12 at 16].

The Court acknowledges the cases that Defendants cite where courts dismiss APA claims in part based on this reasoning. [Doc. 10 at 16]. However, in those cases, the courts were persuaded by evidence of "significant worldwide backlog of visa applications as well as administrative difficulties specifically affecting the [embassy at issue]." *See Aslam v. United States Dep't of State*, No. 2:22-cv-00701-DAO, 2023 WL 6163969, at *12 (D. Utah Sept. 21, 2023); *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 106 (D.D.C. 2024) (citing *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 166–68 (D.D.C. 2021) (reasoning that because of the "local restrictions at the Moscow Embassy," the Court should not interfere with how the Moscow Embassy and State Department decide to adjudicate visas); *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149–50 (D.D.C. 2021) (agreeing with Defendants that deference to the State Department's priority-setting function is necessary "[g]iven [the extraordinary] backlog [of visas] and the continued suspension of routine operations around the world due to the pandemic")).

On the other hand, in this case, the Court has not been presented with evidence or allegations regarding how many other Iraqi visa applicants are in similar circumstances, spending years awaiting the reconsideration of their visa application following the submission of requested additional information. Nor has the Court been presented with any information regarding how the Iraqi embassy is currently prioritizing visa applications and whether Mr. Said's parents' applications are delayed because of specific resource-

allocation decisions. And while this Court understands from the Joint Status Report that "effective January 21, 2026, the Department of State paused all visa issuances to immigrant-visa applicants, like those at issue in this case, who are nationals of Iraq," *see* [Doc. 23 at 2], this Court takes judicial notice that as of August 21, 2026, the legal viability of such a "pause" is unclear, at best, *see* U.S. Department of State, *Immigrant Visa Processing Updates for Nationalities at High Risk of U.S. Public Benefits Reliance*, Travel.State.Gov. (Aug. 28, 2026), https://travel.state.gov/content/travel/en/News/visas-news/immigrant-visa-processing-updates-for-nationalities-at-high-risk-of-public-benefits-usage.html ("As of August 21, 2026, in accordance with the Court's order in *CLINIC et al. v. Rubio, et al.*, the January 2026 pause of immigrant visa issuance to nationals of 75 countries [including Iraq] is no longer in effect."); *Cath. Legal Immigr. Network, Inc. v. Rubio*, No. 26-cv-00858-JAV, 2026 WL 2455099, at *8 (S.D.N.Y. Aug. 21, 2026); *Ali-Bappi v. Rubio*, No. 26-cv-02424-RER, 2026 WL 2754899, at *1–2 (E.D.N.Y. Sept. 17, 2026).

This law, and the lack of evidence in the record, underpin this Court's determination that it is inappropriate to dismiss this unreasonable delay claim at the motion to dismiss phase. In so ruling, this Court does not pass on the merits of the case, nor does it pass on whether Plaintiff will be able to obtain extra-record discovery. *See e.g., Almaklani v. Trump*, 444 F. Supp. 3d 425, 432–33 (E.D.N.Y. 2020). But this Court does not have a sufficient basis for concluding as a matter of law that Plaintiff cannot prevail on his APA claim. The Court respectfully **DENIES** the Motion to Dismiss.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Defendants' Motion to Dismiss First Amended Complaint [Doc. 10] is **DENIED**; and

(2) Counsel for the Parties are **DIRECTED** to meet and confer and contact the Chambers of the Honorable Susan B. Prose regarding further scheduling of this matter.

DATED: September 28, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge